UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

v.

JOSEPH FURANDO

Case No. 1:13-cr-189-SEB-TAB-4

ORDER ON MOTION FOR
SENTENCE REDUCTION UNDER
18 U.S.C. § 3582(c)(1)(A)
(COMPASSIONATE RELEASE)

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:13-cr-00189-SEB-TAB |
| | ) |
| JOSEPH FURANDO, | ) -04 |
| | ) |
| Defendant. | ) |

**ORDER**

On December 18, 2021, Defendant Joseph Furando—who is represented by retained counsel—filed an Emergency Motion for Compassionate Release, arguing that he should be immediately released from prison because of the dangers associated with the COVID-19 pandemic. Dkt. 528. Specifically, he argued that "extraordinary and compelling reasons" supported his release within the meaning of 18 U.S.C. § 3582(c)(1)(A)(i) because he has various medical conditions that place him at risk of having a severe illness if infected with COVID-19 and he cannot adequately protect himself from being infected while incarcerated. For the reasons explained below, his motion is **denied**.[1]

**I.   Background**

In 2016, the Court sentenced Mr. Furando to an aggregate sentence of 240 months in prison and three years of supervised release after he pled guilty to 13 counts of wire fraud, in violation of 18 U.S.C. § 1343; 12 counts of engaging in prohibited financial transactions, in violation of 18 U.S.C. § 1957; one count of making false statements, in violation of 18 U.S.C. § 1001; and one count of conspiracy to commit criminal offense and to defraud the United States,

---

[1] The Court concludes that it does not require a response from the United States to decide the issues raised by this motion.

in violation of 18 U.S.C. § 371. Dkts. 304, 312. The Court also ordered Mr. Furando to pay more than $56 million in restitution. *Id.*

The Seventh Circuit affirmed this sentence, finding Mr. Furando's direct appeal to be frivolous. *United States v. Furando*, 655 F. App'x 507 (7th Cir. 2016). The court described the underlying offense conduct and subsequent events as follows:

> From 2009 until 2012, two companies owned and operated by Furando bought more than 35 million gallons of inexpensive biodiesel, falsified documents to make the fuel appear eligible for tax credits through an EPA program, and resold the fuel to a coconspirator, E–Biofuels, LLC. E–Biofuels then marked up the price as if the fuel was eligible for the tax credits and sold it to other retailers, generating more than $55 million in profit. A grand jury charged Furando, his companies, and others with conspiracy, 18 U.S.C. § 371; wire fraud, 18 U.S.C. § 1343; false statements, 18 U.S.C. § 1001; and money laundering, 18 U.S.C. § 1957. Furando pleaded guilty to all 27 counts in which he was named.

> At sentencing, witnesses testified to multiple instances of criminal conduct by Furando between the indictment and sentencing. One of Furando's coconspirators testified that he had threatened to make her "disappear" and hurt her family if she turned on him. The witness, who had been chief operating officer of Furando's biofuel companies, told EPA agents the truth about the scheme and her involvement. After he was indicted, Furando learned what she had told the agents and demanded that she retract her confession.

> When Furando learned that she instead had contacted the prosecutor saying that she had more information to share, Furando again told her to recant and offered to pay her attorney's fees if she wrote a retraction, which she did.

> Another witness and former employee of Furando's testified that, while on pretrial release, he had physically and sexually assaulted her on several occasions, told her to lie at a court hearing about a physical altercation between Furando and the former COO, and forced her to help him frame the former COO for prostitution so that he could discredit her as a witness.

> Even after Furando's bond was revoked and he was taken into custody, he continued planning crimes and attempting to silence witnesses against him. His cellmate testified that Furando had said he wanted to "make a couple people in his case disappear," provided personal details about the two female employees, and suggested poisoning them with a vial of liquid nicotine stored in his garage. Furando also asked his cellmate to distribute LSD for him and deposit the profits into his jail commissary account.

*Id.* at 508–09.

Mr. Furando later filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, in which he argued that his counsel had been ineffective. Dkt. 451. That motion was denied, dkt. 490, and Mr. Furando's appeal of the denial was dismissed, *see Furando v. United States*, No. 1:17-cv-3925-SEB-MJD, dkt. 32 (S.D. Ind.).

Mr. Furando represents that he has been in custody for almost seven years. *See* dkt. 528 at 8. He is currently incarcerated at FCI Fort Dix. The Bureau of Prisons ("BOP") lists his anticipated release date (with good-conduct time included) as February 5, 2032. That is, he has served less than half his sentence and is not scheduled to be released for about 10 years.

## II.     Discussion

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, the court may "reduce a prison sentence if, 'after considering the factors set forth in section 3553(a) to the extent that they are applicable,' it finds 'extraordinary and compelling reasons warrant[ing] such a reduction.'" *United States v. Sanders*, 992 F.3d 583, 587 (7th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). The Seventh Circuit has held that a court has broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). Ultimately, however, "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).

Recently, the Seventh Circuit held that the risk presented by COVID-19 could not be deemed an extraordinary and compelling reason for release for an inmate who had declined the vaccine without an adequate medical justification. *See United States v. Broadfield*, 5 F.4th 801,

803 (7th Cir. 2021). In so holding, the court reasoned, "[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer far more relief than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine may still turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *Id*. Since its holding in *Broadfield*, the Seventh Circuit has re-affirmed this conclusion on several occasions. *See*, *e.g.*, *United States v. Kurzynowski*, 17 F.4th 756, 760–61 (7th Cir. 2021) ("Vaccinated prisoners in 2021 do not face the same risks of serious illness as they did in 2020 . . . . Because Kurzynowski is vaccinated, he is ineligible for relief on remand.") (citing *Broadfield*, 5 F.4th at 803).

In his motion, Mr. Furando did not address the application of *Broadfield*, *Kurzynowski*, or other cases with similar holdings. Neither did he explain whether he had been vaccinated against COVID-19 or, if not, whether he was offered the vaccine and declined it. Absent such information and given the reasoning of *Broadfield* and *Kurzynowski*, it appeared to the Court that the COVID-19 pandemic could not be an extraordinary and compelling reason warranting relief for Mr. Furando under § 3582. Accordingly, the Court ordered Mr. Furando to provide information about his vaccination status and show cause why his motion for compassionate release should not be denied because the COVID-19 does not present extraordinary and compelling reason for his release. Dkt. 529.

Mr. Furando filed his response to the Show-Cause Order on December 27, 2021. Dkt. 530. In the response, he stated that he had received his first dose of the Moderna COVID-19 vaccine on March 10, 2021, and his second dose of the Moderna COVID-19 vaccine on April 6, 2021. *Id.* He also stated that he was offered a booster shot on or around December 6, 2021, but

was unable to have it administered because a "total recall" required him to immediately return to his housing unit. *Id.* Finally, he stated that he had not been offered a booster shot again. *Id.*

Although Mr. Furando informed the Court as to his vaccination status, he did not address the applicability of *Broadfield* or *Kurzynowski* or otherwise explain why the dangers of the COVID-19 pandemic represented an extraordinary and compelling reason warranting his immediate release in light of the Seventh Circuit's recent cases on the topic. His motion for compassionate release is due to be denied on that ground alone. Regardless, the record now clearly shows that Mr. Furando is fully vaccinated against COVID-19.[2] Mr. Furando has not presented evidence or argument showing that he is among the small number of inmates who cannot benefit from the vaccine.[3] Thus, under *Broadfield* and *Kurzynowski*, he cannot show extraordinary and compelling reasons warranting relief under § 3582(c)(1)(A).

Mr. Furando speculates that being vaccinated will not adequately protect him from being infected with variants of the COVID-19 virus—such as the currently prevalent Delta and Omicron variants. Dkt. 528 at 18. But the proper question is not whether being vaccinated will prevent Mr. Furando from being infected with COVID-19. In the context of deciding whether extraordinary and compelling reasons warrant release, the proper inquiry is whether being vaccinated will reduce Mr. Furando's risk of experiencing severe illness if he contracts COVID-19—that is, the risk that he will be hospitalized with or die from COVID-19. Although no vaccine is perfect, studies have provided a growing body of evidence that mRNA COVID-19 vaccines—such as the Moderna vaccine that Mr. Furando received—reduce the risk associated with COVID-19 among

---

[2] Mr. Furando has also been offered a booster shot, which belies his argument that the BOP lacks sufficient vaccine doses and the accompanying implication that he might not be able to receive a booster shot. *See* dkt. 528 at 18–19.

[3] Notably, Mr. Furando submitted an affidavit from a medical expert, but that medical expert failed to mention that he is fully vaccinated against COVID-19 or to offer an opinion as to whether Mr. Furando is unable to benefit from the vaccine. *See* dkt. 528-4.

people who are fully vaccinated, including severe illness and death. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Dec. 28, 2021). Indeed, in October 2021 (after the Delta variant began to surge in the United States), unvaccinated people had a five-times greater risk of testing positive for COVID-19 and a 14-times greater risk of dying from COVID-19 as compared to fully vaccinated people. *See* https://covid.cdc.gov/covid-data-tracker/#rates-by-vaccine-status (last visited Dec. 28, 2021). Despite Mr. Furando's concerns about COVID-19 variants, the CDC also reports that the COVID-19 vaccines authorized for use in the United States offer protection against the Delta variant and are expected to protect against severe illness, hospitalizations, and deaths due to infection with the Omicron variant. https://www.cdc.gov/coronavirus/2019-ncov/variants/variant.html (last visited Dec. 28, 2021).

The Court recognizes that the COVID-19 vaccines are not perfect and that some vaccinated people may contract COVID-19. Nonetheless, all inmates (and all people) face some risk from infectious disease. By any measure, Mr. Furando's risk of experiencing a severe case of COVID-19 has been significantly reduced by virtue of his vaccination. Accordingly, the Court declines to exercise its discretion to find extraordinary and compelling reasons warranting his release under § 3582(c)(1)(A)(i).

Because the Court declines to find extraordinary and compelling reasons warranting relief, it need not discuss the § 3553(a) factors at length. Nonetheless, the Court notes that the § 3553(a) factors do not favor release at this time.[4] The Court recognizes that Mr. Furando may

---

[4] Those factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and

face some risk from COVID-19 and that he has health problems (including an aortic aneurysm) that may require special attention. The Court also applauds him for maintaining mostly clear conduct and making good use of his time in prison by, among other things, teaching classes to other inmates. Nonetheless, as summarized by the Seventh Circuit, above, Mr. Furando's crimes were extremely serious, and his behavior after his indictment was reprehensible. Mr. Furando claims that his sentence was disproportionately long as compared to other defendants who committed similar offenses, but he was sentenced at the low end of his guidelines range of 235-to-293 months. *See* dkt. 285 at 23. Mr. Furando also complains that his counsel was ineffective in failing to secure a below-guidelines sentence, *see* dkt. 528 and video referenced therein, but Mr. Furando's § 2255 motion was denied, and the Court will not relitigate that motion in the context of a § 3582 motion. Ultimately, the undersigned found a 240-month sentence to be appropriate after considering all the facts. Mr. Furando has served less than half of that sentence and is not set to be released for about 10 years. Releasing him now would, thus, represent a substantial sentence reduction.

Accordingly, the Court concludes that reducing Mr. Furando's sentence to time served at this time would not: reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; or afford adequate deterrence to criminal conduct. *See United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021) ("[A]ll a district judge need do is provide a sufficient reason for [denying relief under § 3582(c)(1)]. One good reason for denying a motion such as Ugbah's is enough; more would be otiose.").

---

the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### III.  Conclusion

For the reasons stated above, Mr. Furando's Emergency Motion for Compassionate Release, dkt. [528], is **denied**.

**IT IS SO ORDERED.**

Date:   1/5/2022

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel