UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:13-cr-00189-SEB-TAB |
| | ) | |
| JOSEPH FURANDO, | ) | -04 |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION TO RECONSIDER DENIAL OF MOTION FOR COMPASSIONATE RELEASE**

Pending before the Court is Defendant Joseph Furando's ("Furando" or "Defendant") July 25, 2025, Motion to Reconsider [Dkt. 642] our July 1, 2025, Order [Dkt. 630] denying his Motion for Compassionate Release. The Government has filed its Response in Opposition [Dkt. 663] to the Motion to Reconsider on December 22, 2025. On January 12, 2026, Defendant filed his Reply Brief [Dkt. 669].[1] The motion is fully briefed and ripe for decision.[2]

---

[1] On February 17, 2026, Defendant submitted a pro se letter [Dkt. 676] to the Court requesting an expedited ruling on his § 821 petition, without first awaiting our ruling on the motion for compassionate release, as he previously agreed. In his letter, he represents that he is eight months away from home detention eligibility. Records provided to the Court by the Bureau of Prisons specify that Defendant's earliest possible release date from federal custody is on August 5, 2030, which is the date of home detention eligibility. Otherwise, with First Step Act Credits, his projected release date is February 5, 2031. We shall rule on the pending § 821 petition by separate order.

[2] During the pendency of Defendant's various attempts to secure an order granting him compassionate release, the Court directed the parties to engage in discussions with one another as well as Bureau of Prisons medical officials to determine from treatment records and medical caregivers the adequacy and appropriateness of the medical care being provided Defendant with regard to the conditions of which he complains, namely, his ascending aortic aneurysm and hypertension. As we discuss more fully in subsequent portions of this order, because Defendant's motions rest on his assertion that he suffers from a life-threatening condition requiring a level of medical expertise and sophistication beyond that available to him within the BOP entitling him to compassionate release, the Court has taken steps to determine whether

Defendant filed an initial motion for compassionate release [Dkt. 528] on December 18, 2021, almost immediately following the affirmance of his underlying convictions by the Seventh Circuit Court of Appeals; that motion mirrored similar motions filed by thousands of inmates nationwide based on allegations relating to their exposures to COVID. The Court denied that motion in fairly short order on January 5, 2022 [Dkt. 532]. Thereafter, on December 22, 2023, Furando filed a motion to reduce sentence [Dkt. 577], pursuant to U.S.S.G. Amendment § 821, for which he initially sought the appointment of counsel. Before the Court ruled on the § 821 request, some eight months later Furando filed a second motion for compassionate release. [Dkt. 581]. The second motion for compassionate release was denied on July 1, 2025.[3] This is the order he currently seeks to have reconsidered.

Reconsideration, according to Furando, is warranted on the basis of newly discovered evidence in the form of his ongoing medical treatment records, which document his allegedly worsening health as a result of the Bureau of Prisons's ("BOP") inadequate medical care. In support of his motion to reconsider, he has filed 168 pages of medical records.

---

the care he is receiving in sufficient and appropriate, whether he requires supplemental, enhanced CT imaging services, and whether his condition presents as a crisis such that it qualifies as an "extraordinary and compelling reason" justifying his immediate release from incarceration. In response to the Court's directive of January 16, 2025 [Dkt. 605], the parties have provided three Joint Status Reports. [Dkts. 606, 612, 619].

[3] At Furando's request, the Court agreed to stay a ruling on the § 821 petition for 21 days following a decision on the motion for compassionate release, allowing Defendant to supplement his petition, if he chooses to do so. [Dkts. 647, 649]. In his recent letter to the court [Dkt. 676], Furando has changed his mind and requests that the court rule promptly.

2

"Although technically, a [m]otion to [r]econsider does not exist under the Federal Rules of Civil Procedure, Rule 54(b) of the Federal Rules of Civil Procedure 'governs non-final orders and permits revision at any time prior to the entry of judgment . . . .' " *Quality Leasing Co. v. Int'l Metals LLC*, No. 1:18-cv-01969-TWP-TAB, 2021 WL 252719, at *2 (S.D. Ind. Jan. 26, 2021) (quoting *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012)). Rule 54(b) generally serves "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (citation omitted). Such motions "are appropriate where the court has: (1) patently misunderstood a party, (2) made a decision outside the adversarial issues presented to the court by the parties, or (3) made an error not of reasoning but of apprehension." *Freson v. Centerpoint Energy Inc.*, No. 3:19-cv-00075-MPB-RLY, 2020 WL 13574989, at *1 (S.D. Ind. Dec. 8, 2020) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citations omitted).

Based on Furando's reasoning, no decision by the court denying his compassionate release motion(s) will ever be final so long as he continues to receive what he regards as inadequate medical care. The "deficiencies" he seeks to document with an endless supply of new medical records/data reflecting the details of his ongoing care, which he has proffered here in conjunction with his "motion to reconsider," is "new" evidence, not "newly discovered" evidence. Applying well-established precedent, a motion to

3

reconsider is not an appropriate procedure for continuing the disagreement when the court's prior order, based on the information available at that time, was neither erroneous in terms of reasoning or apprehension nor resulted in manifest error.

After arguing that a "factual change must be 'significant' in that the facts show a manifest error," the Government notes that here "there is no argument, based on facts only now available, that could not have been made 'during the pendency of the previous motion.' " [Dkt. 663 at 5 (citations omitted)]. Continuing, the Government states: "The arguments here—that BOP failed to treat Mr. Furando's aneurysm and blood pressure—are just the same warmed-over arguments with updated facts. He essentially posits that the arguments he made 'during the pendency of the previous motion' were right all along." [*Id.* (citations omitted)].

In addition, Furando's Motion to Reconsider fails to address the Court's additional grounds based on the § 3553(a) factors, namely, that those criteria alone warranted the denial of his motion for compassionate release. In that regard, we summarize once more the procedural history of this prosecution: On January 21, 2016, Defendant was sentenced to 240 months of incarceration for convictions on thirteen counts of wire fraud, in violation of 18 U.S.C. § 1343; 12 counts of engaging in prohibited financial transactions, in violation of 18 U.S.C. § 1957; one count of making false statements, in violation of 18 U.S.C. § 1001; and one count of conspiracy to commit a criminal offense and to defraud the United States, in violation of 18 U.S.C. § 371. [Dkts. 304, 312]. The egregiousness of his criminal conduct that culminated in these 27 convictions, viewed in terms of its duration and scope and resulting harm, has been fulsomely described on

several occasions throughout the court record, including in particular by the Seventh Circuit in its opinion in *United States v. Furando*, 655 F. App'x 507 (7th Cir. 2016) (affirming Furando's sentence). We will not repeat here the extensive factual predicate of his convictions, matters with which the undersigned judge is acutely familiar, having served as the presiding judge over his trial and sentencing and post-trial motions. [Dkt. 532 at 3]. Our § 3553(a) analysis was the starting point for our conclusion that there were no extraordinary and compelling circumstances warranting a reduction in sentence. Furando concedes in his motion to reconsider that "[t]he facts concerning the details of [his] offense have already been fully briefed and are unchanged by the continual worsening of [his] heart condition." [Dkt. 669 at 3].

    Defendant nonetheless has persisted in his dogged pursuit of an early release from incarceration based on what he describes as "extraordinary and compelling reasons," pursuant to Title 18, United States Code § 3582(c)(1)(A)(i), relating to two medical conditions from which he suffers—a preexisting ascending aortic aneurysm and high blood pressure. In his motion to reconsider, he posits that the voluminous medical records he has submitted show a "marked increase in the size of his aortic aneurysm coupled with a decline in the BOP's monitoring of his condition" warrant his immediate release. [Dkt. 669 at 3].

    The voluminous medical data reveals various ups and downs in terms of the seriousness of his medical conditions. His current age is 60 years (DOB: October 29, 1965). He reports that his aneurysm has existed since 2005 and was present at the time of his incarceration in 2016, some ten years ago. His blood pressure readings continue to

5

vacillate over time, admittedly recently reaching dangerously high levels.  His aneurysm is being monitored and tracked via x-ray to determine if it is or has reached critical size dimensions, though debates between the parties' physician experts have cropped up regarding whether the x-ray quality of the machine used on Defendant is sufficiently sophisticated to generate accurate, reliable data.  Over the years, despite various ups and downs, neither condition has ever been deemed to have reached a crisis level where Furando's life was hanging in the balance.

  These conditions have been and are being treated by BOP medical staff, as described by BOP treating physician Dr. Mace-Leibson in her declaration.  [*See generally* Mace-Leibson Decl., dkt. 624-1].  She characterizes them as "chronic and stable, not critically urgent, conditions" throughout which period of time BOP physicians have treated Furando with regular physical examinations as well as with appropriately prescribed medications, x-rays, dietary restrictions, and exercise regimens.  [*Id.* ¶¶ 6, 13–15].  However, Furando's compliance with the dietary and exercise directives, as well as his medications from time to time, has been sporadic and lackadaisical.

  More specifically, Dr. Mace-Leibson documented in her declaration the course of treatment she has both administered and prescribed for Furando during the first six months of 2025.  Noting that he had no history of dizziness, slurred speech, numbness or other signs of malignant hypertension, he was nonetheless placed on a regimen of dietary restrictions to limit sodium intake and regular exercise in addition to taking heart medications.  He was scheduled for regular blood pressure checks, which he accessed only intermittently, and his participation in the "pill line distribution" process was also

sporadic. She concludes her report as follows: "Based on my interactions with Furando, my training and experience, my review of his medical records and commissary lists, I am concerned that he is not adhering of the recommended dietary, medication, and treatment regimen in an effort to obtain early release." [*Id.* ¶ 15].

Defendant contends that BOP resources and medical personnel are not sufficiently trained or scientifically sophisticated or technically proficient to appropriately manage the severity of his conditions, maintaining that the aneurysm has grown over time and his blood pressure has increased to a point that his health has now become seriously compromised. He insists that the BOP's cardiac care has been insufficient because the "BOP is either unequipped or unwilling to properly tend to [his] aortic aneurysm." [Dkt. 669]. We agree with the Government counsel's observation that this is the same argument he made three years ago in December 2021, when he filed his initial motion for compassionate release [Dkt. 528], which motion was denied on January 5, 2022 [Dkt. 532]. "Since his last denial, no BOP medical professional has said that Furando's condition has declined to the point that surgical intervention is a necessity, nor have they stated that he is in immediate danger. In fact, his medical records show that each year he is stable." [Dkt. 599 at 6–7]. The voluminousness of his medical record that has been compiled to document the nature and extent of his care, large portions of which were introduced as exhibits for the purpose of substantiating his claims in the pending motion, actually substantiates the extensiveness and quantity of care and attention dispensed for his benefit.

Furando's medical situation presents, as Dr. Mace-Leibson stated, as a chronic, long term health management issue, which, to our way of thinking (though we, obviously, have no personal medical expertise to draw on) seems not unlike other similar chronic medical conditions, such as diabetes, kidney failure, arthritis, back and nerve pain, and Crohn's disease. It is unclear to us precisely what treatment Furando believes he could avail himself of if he were released that he is not receiving from the BOP physicians. The BOP physicians and other prison health care providers are charged on a daily basis with providing long-term care not only to Furando but to the many thousands of other inmates who require similar levels of attention and care often for conditions caused or exacerbated by old age.

While both his aortic aneurysm and elevated blood pressure require special levels of medical attention and therapeutic care, which we assume the BOP will continue to provide him, they do not constitute, separately or together, an extraordinary and compelling reason supporting Furando's immediate release based on compassionate grounds so that he can secure life-saving medical care. Furando has not put forward evidence establishing that he has "a medical condition that requires long term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C)(P.S.). In addition, pursuant to our prior analysis of the § 3353(a) factors which, again, is fully

8

incorporated here by reference, the motion to reconsider the previous order denying compassionate release is hereby **DENIED**.  [Dkt. 642].

    IT IS SO ORDERED.

Date: 3/10/2026

_SARAH EVANS BARKER, JUDGE_
United States District Court
Southern District of Indiana

Distribution:

Joseph Furando
BOP #65853-050
FCP Canaan
P.O. Box 200
Waymart, PA  18472

Counsel of Record via CM/ECF

Electronic Notice to USPO